## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | |
|---|---|
| ALONZO BAGLEY | CIVIL ACTION NO. 19-10 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| TYLER KOLB, ET AL. | MAG. JUDGE KAYLA D. MCCLUSKY |

### MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment, filed by the Defendants, Shreveport Police Officers Tyler Kolb ("Kolb"), Vanessa Gray ("Gray"), Chandler Cisco ("Cisco"), and the City of Shreveport (collectively, "Defendants"). Defendants ask the Court to dismiss all claims brought by Plaintiff Alonzo Bagley ("Bagley"). The motion has been fully briefed. For the reasons below, the motion [Record Document 55] is **GRANTED IN PART** and **DENIED IN PART**.

### BACKGROUND

On January 6, 2018, Bagley was at his wife's, Tangela Bagley, house and consumed a six-pack of beer, a gram of cocaine, smoked two blunts, and shared a half-pint of vodka with a friend. Record Documents 55-1, ¶ 1; 61-1, ¶ 1.[1] That night, Bagley got into a verbal disagreement with his wife from whom he was separated at the time. Record Documents 55-1, ¶ 2; 55-10, pp. 2–3. At approximately 10:20 p.m., "the Shreveport Police Department received a complaint of Plaintiff being outside talking loudly and causing a disturbance." Record Document 55-1, ¶ 2. Shreveport Police Officers Kolb and Gray were dispatched to the scene. *Id.* ¶ 4. Kolb arrived first and heard loud arguing from inside the residence. *Id.* ¶ 5. As Kolb approached the front door, the door opened and Bagley attempted to move past him. *Id.* ¶ 6. Bagley failed to comply with Kolb's demands to

---

[1] Hereinafter, for the sake of brevity, the Court will cite to only Defendants' statement of material facts, Record Document 55-1, when the fact has been admitted by Bagley.

"hold on" and "sit down." *Id.* ¶¶ 7–8. Tangela Bagley informed Kolb that Bagley was going to run. *Id.* ¶ 7. Kolb proceeded to force Bagley to the ground and placed him in handcuffs behind his back. *Id.* ¶¶ 8–9.

Shortly after, Officer Gray arrived at the scene and assisted Kolb in escorting Bagley to Kolb's patrol car. *Id.* ¶ 10.[2] Kolb conducted a pat-down of Bagley and removed a vise grip from Bagley's pocket. *Id.* ¶ 12. Kolb placed Bagley in the back of his patrol car and went to talk to Tangela Bagley regarding the complaint. Tangela Bagley informed Kolb that Bagley threw water in her face. *Id.* ¶ 13. While Kolb was talking to Tangela Bagley, Bagley began to yell from the back of the patrol unit and hit the inside of the car. *Id.* ¶ 14. Gray instructed Bagley to calm down. *Id.*

After Kolb finished interviewing Tangela Bagley, he returned to his police car and removed Bagley to conduct a second search. *Id.* ¶ 15.[3] During the search, Kolb found a clear plastic bag of marijuana on Bagley's person. *Id.* ¶ 16. Kolb advised Bagley that he was placing him under arrest for domestic abuse battery and possession of narcotics. *Id.* ¶ 17. As Kolb tried to return Bagley to the back of his car, Bagley became uncooperative by stiffening his body and refusing to get in the car. *Id.* ¶ 18. After failing to get Bagley in his car, Kolb escorted Bagley to Gray's police SUV. *Id.* ¶ 19.[4] While being escorted, Bagley went limp and fell to the ground. *Id.* ¶ 20. After Bagley appeared to settle down, Kolb stood him up and escorted him to Gray's SUV. *Id.* ¶ 21. Kolb and Gray shoved Bagley into the vehicle headfirst, and Kolb pulled Bagley into a sitting position and

---

[2] Bagley does not deny that he was escorted to the police car; he denies how Defendants describe the escort. *See* Record Document 61-1, ¶ 10. The manner in which Bagley was escorted to the car is not material to the claims before the Court.

[3] Bagley only disputes that Defendants did not characterize the search as a second search. *See* Record Document 61-1, ¶ 15.

[4] Bagley does not dispute that he was escorted to Gray's SUV. *See* Record Document 61-1, ¶ 19. He only denies the reasoning why Kolb decided to escort him to Gray's vehicle, which is immaterial for summary judgment purposes. *See id.*

secured the seatbelt around him. *Id.* ¶¶ 22–23. At this time, Bagley kicked in the direction of Kolb and yelled for Kolb to "punch me." *Id.* ¶ 23.

After closing the car door, Kolb and Gray left Bagley unattended for almost eleven minutes. Record Document 61-2, Gray Video Camera 2, at 22:40:20 to 22:51:12. During this time, Bagley unbuckled himself, yelled from the car, and attempted to wrap the seatbelt around his neck. *Id.* at 22:40:48 to 22:43:50. After having difficulties getting the seatbelt around his neck, Bagley proceeded to maneuver the handcuffs from behind his back to the front of his body. *Id.* at 22:43:50. Bagley then wrapped the seatbelt around his neck in an attempt to strangle himself. *Id.* Approximately eleven minutes after being left in the police car, Gray noticed what Bagley had done. *Id.* at 22:51:12. Gray called for Kolb's assistance and notified him that the seatbelt was around Bagley's neck. *Id.* Kolb opened the back passenger side door and found Bagley on the back seat with his head closest to Kolb. *Id.* at 22:51:28. As Kolb reached in Bagley's direction, Bagley flailed his arms and curled up into a fetal position. *Id.* at 22:51:30. Kolb proceeded to gain control of Bagley by grabbing his handcuffs and striking him once in the chest. *Id.* at 22:51:37. Then, within seconds, Kolb delivered six forceful closed-fist punches to Bagley's face. *Id.*

After Kolb delivered these six strikes, neither Kolb nor Gray attempted to remove the seatbelt from around Bagley's neck. *Id.* Instead, Kolb sat Bagley up in the back of the car and eventually tried to pull him out of the car by his lower body. *Id.* However, the seatbelt remained around Bagley's neck, and Bagley was choked as Kolb tried to jerk Bagley from the car. *Id.* at 22:52:38 to 22:52:52. After realizing that he could not pull Bagley out, Kolb leaned in the car and began unwrapping the seatbelt from around Bagley's neck. *Id.* Kolb can be heard saying "it is all the way around," "come on man, come on," and "get out, get out, get out." *Id.* at 22:52:52 to 22:53:09. Kolb told Gray to radio Emergency Medical Services ("EMS"). *Id.* at 22:53:09. Bagley

3

can be heard struggling to breathe and gasping for air once the seatbelt was removed. *Id.* at 22:53:12. After removing the seatbelt from around Bagley's neck, Kolb removed Bagley from the vehicle and sat him on the ground next to it. *Id.*

While awaiting EMS, Officer Cisco arrived to assist Gray and Kolb. Record Document 55-1, ¶ 51. Bagley, still handcuffed, remained seated beside the police car. Record Document 61-2, Gray Video Camera 2, at 22:53:12 to 22:58:00. While Cisco and Gray were near Bagley, Bagley suddenly screamed out and moved his body erratically. *Id.* at 22:57:00. The parties agree that Cisco pushed Bagley back to the ground and delivered one or two closed-fist strikes to Bagley's face. Soon after, EMS arrived and found Bagley with a swollen eye and bleeding from the mouth. Record Document 55-1, ¶ 54. Bagley was transported to University Health in Shreveport and diagnosed with a right orbital medial wall fracture and a C2 lamina fracture in his neck.[5] *Id.* ¶¶ 55–56. After being discharged, Bagley was charged with resisting an officer, domestic abuse battery, and possession of marijuana. *Id.* ¶ 58. Bagley pleaded guilty to resisting an officer on February 6, 2018. *Id.* ¶ 59.

Bagley filed this suit under 42 U.S.C. § 1983 and state law alleging a litany of claims against the individual officers and the City of Shreveport. *See* Record Document 35. Bagley alleges that Kolb and Cisco are liable for excessive force in violation of the Fourth Amendment and the Louisiana Constitution. *Id.* at 5–6, 8. Bagley also claims that Kolb and Cisco are liable for the state law tort of battery. *Id.* at 8–9. Alternatively, Bagley accuses Kolb of negligence when pulling him from the car. *Id.* at 9. Bagley asserts that Gray is liable for failing to intervene when Kolb and Cisco

---

[5] Defendants contend that the doctor concluded that the neck fracture was chronic in nature. Record Document 55-14, p. 28. Bagley disputes this point, but he has not provided medical evidence to the contrary. *See* Record Document 61-1, ¶ 56. He further states that he suffered pain, and if the injury was chronic in nature, Kolb's actions aggravated the injury. *Id.*

struck him. *Id.* at 7. Bagley also contends that Gray and Kolb are liable under Louisiana law for negligence and/or failing to monitor him. *Id.* at 9. Bagley has brought a *Monell* claim against the City of Shreveport for failing to discipline Kolb. *Id.* at 7–8. Bagley avers that the City of Shreveport is vicariously liable under Louisiana law. *Id.* 8–9. Defendants Kolb, Gray, and Cisco have asserted qualified immunity as a defense, and all Defendants have moved for summary judgment on all of Bagley's claims. Record Document 55.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the non-movant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings and designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal citations and quotation marks omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985) (citing *Adickes*

*v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the non-movant is so "weak or tenuous" that it could not support a judgment in the non-movant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*

## LAW & ANALYSIS

### I.   Individual Capacity Claims against Defendant Officers

#### A.  Qualified Immunity under § 1983

Title 42, United States Code, Section 1983 provides a federal cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States against any person acting under color of state law. 42 U.S.C. § 1983. Section 1983 does not create substantive rights but provides remedies to the rights established in the United States Constitution and other federal laws. *See Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To assert a claim for damages under this statute, a plaintiff must demonstrate "(1) a deprivation of a right secured by federal law[,] (2) that occurred under color of state law, and (3) was caused by a state actor." *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004). Nonetheless, the doctrine of qualified immunity shields government officials from liability for claims against them in their individual capacities "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

6

would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This protection exists to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Because qualified immunity is "an immunity from suit rather than a mere defense to liability, . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Accordingly, the issue of whether qualified immunity applies should be resolved at the earliest possible stage in the litigation. *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011). While qualified immunity is technically an affirmative defense, it is the plaintiff's burden to negate the defense once it has been raised. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

The issue of qualified immunity requires the Court to make a two-part inquiry: (1) whether the facts alleged or shown by the plaintiff demonstrate a violation of a constitutional right, and (2) if a violation has been established, whether the officer's actions were objectively reasonable in light of clearly established law at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A court may begin its analysis of qualified immunity with either prong. *Gibson v. Kilpatrick*, 773 F.3d 661, 666 (5th Cir. 2014). If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact. *See Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (holding that qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law")).

At the summary judgment stage, a plaintiff satisfies the first prong by establishing that "genuine issues of material fact exist regarding the reasonableness of the official's conduct." *King v. Handorf*, 821 F.3d 650, 654 (5th Cir. 2016) (quoting *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 419 (5th Cir. 2008)). This proof need not be "absolute," but it must consist of more than "mere allegations." *Id.* (quoting *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)). The second prong requires that "[t]he constitutional right must be sufficiently clear to put a reasonable officer on notice that certain conduct violates that right." *Sanchez v. Swyden*, 139 F.3d 464, 466 (5th Cir. 1998). A public official may assert the defense of qualified immunity even though a plaintiff's civil rights have been violated, provided that the official's conduct was objectively reasonable. *Id.* at 467. "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." *Goodson v. Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000).

### B.  Fourth Amendment Excessive Force Standard

The constitutional right at issue in this case arises from the Fourth Amendment, which provides the "right to be free from excessive force during a seizure." *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017) (quoting *Poole*, 691 F.3d at 627). To prove an excessive force claim, Bagley must show "(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009) (quoting *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)). Excessiveness turns upon whether the degree of force used was reasonable in light of the totality of the circumstances facing the officer in each case. *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)). Relevant factors include the "severity of the

crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* These are known as the *Graham* factors. When deciding whether to use force, officers must determine "not only the need for force, but also 'the relationship between the need and the amount of force used.'" *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam) (quoting *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999)). The reasonableness of the officers' conduct cannot be judged with the benefit of hindsight, but it must be assessed from the viewpoint of a reasonable officer on the scene at that very moment. *See Graham*, 490 U.S. at 396. Indeed,

> [n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id.* at 396–97 (internal citations and quotation marks omitted). "Excessive force claims are thus necessarily fact-intensive and depend on the facts and circumstances of each particular case." *Poole*, 691 F.3d at 628 (cleaned up). The facts must be judged objectively "without regard to [the officer's] underlying intent or motivation." *Graham*, 490 U.S. at 397.

The parties appear to agree that the three uses of force at issue in the instant case are (1) Kolb's six closed-fist strikes to Bagley's face; (2) Kolb pulling Bagley from the car while the seatbelt remained around his neck; and (3) Cisco's closed-fist strikes to Bagley's face.[6] In analyzing whether the officers are entitled to qualified immunity, the Court must consider "each officer's

---

[6] Defendants dedicate a small portion of their brief to acts Kolb took before he struck Bagley in the face. Record Document 55-2, p. 12. Bagley admits that any use of force before Kolb struck him is not at issue in this case. *See* Record Documents 61, pp. 8–18; 61-1, pp. 1–9. The Court agrees that there are only three instances of force for it to analyze.

actions separately, to the extent possible." *Poole*, 691 F.3d at 628. As such, the Court will analyze Kolb's and Cisco's actions separately.

### C.  Kolb's Closed-Fist Strikes

#### 1.  Injury and Causation

The parties do not dispute that Bagley suffered at least a right orbital medial wall fracture from Kolb's strikes. Record Document 55-1, ¶ 55. Although Kolb contends that this bone is easy to break and this injury could result from a small amount of force, he concedes this injury occurred as a result of the force he used. Record Document 55-2, p. 21 n.66; *see also Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013) (per curiam) (stating that "as long as a plaintiff has suffered some injury, even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force") (internal citations and quotation marks omitted).[7] The crux of the dispute is whether the force used by Kolb was clearly excessive and unreasonable.

#### 2.  Objective Reasonableness

To evaluate the reasonableness of the force used during an arrest, a court must look to the totality of the circumstances confronting the arresting officers; these circumstances must include the *Graham* factors: "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether [he was] actively resisting arrest or attempting to evade arrest by flight." *Westfall v. Luna*, 903 F.3d 534, 547 (5th Cir. 2018) (per curiam) (quoting *Trammell*, 868 F.3d at 340).

---

[7] Although *Brown* is not precedential, the Fifth Circuit supported this proposition by citation to precedential decisions. *See* 524 F. App'x at 79 nn.38–40 (citing *Schmidt v. Gray*, 399 F. App'x 925, 928 (5th Cir. 2010) (per curiam); *Flores v. City of Palacios*, 381 F.3d 391, 398 (5th Cir. 2004); *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996)).

Applying the first *Graham* factor, the severity of the crime at issue, Kolb responded to a misdemeanor domestic disturbance call. Record Document 55-1, ¶ 2. Bagley was ultimately booked for domestic abuse battery, resisting an officer, and possession of marijuana, which were all misdemeanors. Record Documents 55-1, ¶ 58; 63-1. Although initially responding to a domestic disturbance call carries with it some degree of danger, the fact that Bagley's alleged offenses were misdemeanors "militat[es] against the use of force." *Trammell*, 868 F.3d at 340 (citing *Reyes v. Bridewater*, 362 F. App'x 403, 407 n.5 (5th Cir. 2010)). Further, the severity of the crime cannot be a justification for the use of force when Kolb's punches were delivered after Bagley was apprehended, handcuffed, extensively searched, and placed in the back of a police car. As such, the Court finds that this factor weighs against the use of force.

Next, the Court evaluates whether Bagley posed an immediate threat to the safety of the officers or others. Kolb contends that Bagley posed a threat to officer safety because his hands were no longer behind his back, but he instead maneuvered them to the front of his body. Record Document 55-5, p. 3. Moreover, Kolb asserts that Bagley was a threat to himself and that he had a duty to prevent Bagley's suicide attempt. *Id.* Kolb claims that he tried to control Bagley, but after that failed, he had to resort to strikes in order for him to be able to unwrap the seatbelt. *Id.* The video confirms that Bagley maneuvered the handcuffs from behind his back to the front of his body. Record Document 61-2, Gray Video Camera 2, at 22:43:50. Bagley proceeded to wrap the seatbelt around his neck in an apparent attempt to strangle himself. *Id.* However, the video also makes clear that Bagley remained handcuffed, confined in the back of the police cruiser, and in a fetal position at the time Kolb punched him. Further, Kolb had twice previously searched Bagley and knew that Bagley was not armed with any weapon. Also relevant is the size difference between Kolb and Bagley. Kolb is 6'7" and weighs approximately 280 pounds, whereas Bagley is about 5'11" and

weighs around 150 pounds. Record Document 61-4, pp. 90–91. Based on these facts, Kolb's contention that Bagley was a threat to officer safety is severely overwrought.

Although an active suicide attempt does not fit squarely in the equation, it is still a fact to consider when objectively looking at the totality of the circumstances. The Fifth Circuit has found that officers have a duty to prevent a suicide and may use some degree of force to prevent self-harm. *See Martin v. Harrison Cnty. Jail*, 975 F.2d 192, 193 (5th Cir. 1992) ("Appellant was attempting suicide and the guards had an obligation to prevent this. Some force was called for."). However, the force must still be objectively reasonable. *See Trammell*, 868 F.3d at 340 (finding a dispute of material fact as to whether an arrestee "posed any danger to himself").

Kolb's assertion that his actions were taken to prevent Bagley's strangulation is disingenuous at best since he made no initial effort to actually solve that problem. This self-serving justification is not borne out by the evidence. In viewing the evidence in a light most favorable to Bagley, the video shows that Kolb made no effort to unwrap the seatbelt before striking Bagley. Record Document 61-2, Gray Video Camera 2, at 22:51:30 to 22:53:12. After punching Bagley, it took Kolb over a minute to unwrap the seatbelt after realizing that he could not just jerk Bagley from the car. *Id.* It was not until after Kolb struck Bagley and moved Bagley around in the car that the seatbelt became taut and Bagley could be heard struggling to breathe. *Id.* Also concerning is Kolb's inconsistent explanations for his use of force. The video captured Kolb justifying his use of force by saying that Bagley was trying to escape, not that Bagley was in danger. *Id.* A jury could conclude that this evidence shows that a reasonable officer would not have perceived the seatbelt as such a danger that immediate violent force was necessary to protect Bagley. The Court would be remiss to find anything other than that genuine disputes of fact remain as to the level of threat Bagley posed to himself. The Court cannot determine as a matter of law that the sheer number of

12

punches that Bagley received was reasonably necessary to prevent him from harming himself. Considering these facts, the Court finds that the second factor weighs against the reasonableness of using six closed-fist strikes to Bagley's face.

Lastly, the Court must consider the third *Graham* factor, whether Bagley was actively resisting arrest or attempting to evade arrest by flight. It is clear from the video that Bagley did not attempt to run away or have an opportunity to evade arrest because he was handcuffed in the back of the police car with a seatbelt around his neck. Record Document 61-2, Gray Video Camera 2, at 22:40:20 to 22:51:12. The parties dispute whether Bagley was actively resisting or passively resisting. Viewing the video in a light most favorable to Bagley, the Court cannot conclude that Bagley was actively resisting. When Kolb opened the car door, Bagley flailed his arms. Bagley proceeded to curl up in a fetal position with his hands protecting his head.[8] *Id.* at 22:51:30. Within the next eight seconds, Kolb adjusted his gloves and tried to pry Bagley's arms from protecting his face. *Id.* Kolb delivered one closed-fist strike to Bagley's upper chest or neck area, which successfully made Bagley release from the fetal position.[9] *Id.* Within seconds, Kolb then delivered six closed-fist strikes to Bagley's face. Based on the video, a jury could reasonably conclude that Bagley was merely passively resisting arrest at the time Kolb delivered the strikes. *See Trammell*, 868 F.3d at 343 (holding that the use of violent force against someone who is "not fleeing, not

---

[8] Shreveport Police Department policy defines passive resistance as "[p]hysical actions that do not prevent [an] officer's attempt to control," and it defines defensive resistance as "[p]hysical actions that attempt to prevent [an] officer's control, but do not involve attempts to harm the officer." Record Document 62-1, p. 2. Active aggression is defined as an assault or battery on an officer or others. *Id.* Viewing the evidence in Bagley's favor, at the time Kolb used closed-fist strikes, reasonable minds could dispute if Bagley was passively resisting or defensively resisting under Shreveport Police Department policy because he curled up into the fetal position without any attempt to harm an officer.

[9] Bagley did not accuse Kolb of excessive force for this strike. As such, the Court will not determine whether this strike was reasonable.

violent, [and] not aggressive" was unreasonable). If a jury concludes that Bagley was merely passively resisting, Kolb's use of six strikes to the face was clearly excessive and unreasonable, especially considering that Bagley was already handcuffed in the back of the police vehicle.

Even if some force may have been required to overcome Bagley's resistance and to remove the seatbelt from around his neck, officers must consider "the relationship between the need and the amount of force used." *Deville*, 567 F.3d at 167 (quoting *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999)); *see also Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 277 (5th Cir. 2015) ("[A]n exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased."). In doing this, the officer must "select the appropriate '*degree* of force'" to utilize. *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020) (emphasis in original) (quoting *Deville*, 567 F.3d at 167–68). "To stay within constitutional bounds, an officer must use force with measured and ascending actions that correspond to a suspect's escalating verbal and physical resistance." *Id.* at 332–33 (cleaned up).

Considering the video and construing all facts in a light most favorable to Bagley, a jury could reasonably conclude that Kolb violated Bagley's constitutional rights by selecting a degree of force—six closed-fist strikes to the face—that was out of proportion to the threat posed by Bagley. Bagley's threat was minimal because he was handcuffed, albeit with his hands in front of him, in the back of the police car after being twice searched. Kolb's strike to the chest was successful in removing Bagley from the fetal position. However, Kolb still escalated his force by striking Bagley multiple times in the face.[10] Kolb never attempted to tell Bagley that he was trying to help remove the seatbelt from around his neck, nor did Kolb attempt to use physical skill before

---

[10] Shreveport Police Department policy formerly advised against strikes to the face when the officer is not faced with a violent threat because of "a higher probability of injury." Record Documents 63-3, pp. 7–8; 63-13, pp. 30–33.

14

resorting to violent force.[11] As such, Kolb's resort to six closed-fist strikes to the face was not necessarily a measured and ascending response to a minimally resisting suspect and was out of proportion to the amount of force required to subdue Bagley. In sum, the *Graham* factors suggest that the use of force was excessive and unreasonable.

As set forth above, viewing the facts in the light most favorable to Bagley, the Court concludes that he has established injuries resulting directly and solely from force that was excessive to the need and objectively unreasonable under the circumstances.

### 3. Clearly Established

The facts show that a jury reasonably could conclude that Kolb violated Bagley's Fourth Amendment rights by excessively striking him in the face while he was in the back of the police vehicle. However, Kolb may still be entitled to qualified immunity if Bagley cannot show that Kolb's conduct was unreasonable in light of clearly established law. This means that as of January 6, 2018, the date of this incident, any reasonable officer would have known that Kolb's actions were unlawful.

Aside from the "rare" and "obvious" case, to be clearly established, a legal principle must be found in the holdings of either "controlling authority" or a "robust 'consensus of cases of persuasive authority,'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42 (2011) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)), and defined with a "high 'degree of specificity,'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015) (per curiam)). The burden is on the plaintiff to identify precedent that "squarely governs" the facts in the instant

---

[11] There may be some cases where the risk of death requires immediate physical force to prevent the suicide. However, the Court cannot conclude as a matter of law that this is one of those cases. When viewing the video in Bagley's favor, the seatbelt did not produce such an exigency that a lower degree of force would have left Bagley at risk of death by strangulation.

case, such that "only someone plainly incompetent or who knowingly violates the law would have perceived a sufficient threat and acted as [Kolb] did." *Mullenix*, 577 U.S. at 15 (cleaned up). However, the cases relied upon need not be identical. There may be "notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)). This "clearly established" test ensures that officials have "fair warning" that particular conduct violates the Constitution. *Anderson v. Valdez*, 845 F.3d 580, 600 (5th Cir. 2016) (quoting *Kinney*, 367 F.3d at 350).

Bagley does not argue that this is one of those rare and obvious cases. As such, he must "identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment." *Wesby*, 138 S. Ct. at 590 (cleaned up). Bagley contends that "using force against someone who is not actively resisting arrest is in violation of clearly established law." Record Document 61, p. 18 (quoting *Muslow v. City of Shreveport*, 491 F. Supp. 3d 172, 189 (W.D. La. 2020)). It has been clearly established since at least 2013 that after handcuffing and subduing a suspect, it is unreasonable for an officer to strike an arrestee. *See Bush v. Strain*, 513 F.3d 492, 501–02 (5th Cir. 2008) (establishing that force must stop when arrestee is handcuffed and subdued); *Ramirez v. Martinez*, 716 F.3d 369, 378–79 (5th Cir. 2013) (same). Further, it is clearly established that striking an arrestee who is merely passively resisting arrest is unlawful. *Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 731 (5th Cir. 2018) (evaluating pre-2018 cases); *Trammell*, 868 F.3d at 343; *Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012).

A jury could reasonably conclude that Bagley was only passively resisting arrest because he "was not fleeing, not violent, [and] not aggressive" at the time Kolb punched him in the face six

times. *Trammell*, 868 F.3d at 343 (holding that by at least 2000, it was clearly established law that it was "objectively unreasonable for an officer to tackle an individual who was not fleeing, not violent, not aggressive, and only resisted by pulling his arm away from an officer's grasp"); *Ramirez*, 716 F.3d at 378–79 (holding that a reasonable officer would find the defendant-officer's use of force to be clearly excessive and unreasonable where, under the plaintiff's version of the facts, he resisted only by pulling his arm away from the defendant-officer's grasp). Here, the clearly established law shows that Bagley's initial flailing and curling up into the fetal position cannot justify Kolb's use of force to Bagley's face, especially considering that Bagley was in handcuffs, confined in the back of the police car, and was twice previously searched by Kolb and found without a weapon.

Even if some force was justified to prevent Bagley from harming himself, a reasonable jury could still find that the force used was at odds with clearly established law because (1) the amount of force used was out of proportion with the amount of forced needed and/or (2) the force was used too quickly and before any real attempt was made to use negotiation tactics or physical skill to remove the seatbelt from around Bagley's neck. *See Deville*, 567 F.3d at 167; *Trammel*, 868 F.3d at 343 (citing *Poole*, 691 F.3d at 629). The Fifth Circuit explained in *Newman* that it was objectively unreasonable for an officer to tase and strike the plaintiff arrestee with a nightstick without resorting to other less violent means when the arrestee's behavior could not be considered active resistance. 703 F.3d at 763. Also, in *Cooper v. Brown*, the Fifth Circuit held that it was unreasonable for officers to increase their use of force on an unarmed suspect who was cornered in a small cubbyhole when that suspect's resistance decreased. 844 F.3d 517, 521–24 (5th Cir. 2016). Like in *Cooper*, Bagley was trapped in the police car without a meaningful way to escape. Further, Kolb knew that Bagley was unarmed because he searched him twice previously. At the time Kolb delivered the

17

strikes, Bagley's resistance had decreased by curling up in the fetal position. Moreover, a jury could determine that the seatbelt did not create such an exigency in this case to warrant excessively striking Bagley in the face. *See Trammell*, 868 F.3d at 340 (finding a dispute of material fact as to whether the arrestee posed a significant risk of harming himself). A jury could find that Kolb acted disproportionately to the need because he "did not reserve" his strikes as a response to active resistance. *Joseph*, 981 F.3d at 341 (citing generally to *Newman*, *Ramirez*, and *Cooper*).[12] A jury could conclude that Kolb "violated clearly established law by failing to attempt less forceful alternatives" and by excessively striking an arrestee in the face despite Bagley posing very little threat. *Id.* (citing pre-2018 cases). Summary judgment is thus inappropriate on Bagley's excessive force claim based on Kolb's six strikes to the face.

### D.  Kolb's Removal of Bagley from the Squad Car

After Kolb struck Bagley, he sat Bagley in an upright position. Record Document 61-2, Gray Video Camera 2, at 22:51:46 to 22:52:52. Bagley can be heard struggling to breathe during this time. *Id.* Kolb is overheard telling somebody that Bagley's hands were in front of him and that he was trying to escape. *Id.* A little over a minute after Kolb delivered the strikes, he can be heard adjusting Bagley's handcuffs. *Id.* Next, Kolb grabbed Bagley by what appears to be the belt area of his pants and tried to jerk him out of the vehicle. *Id.* However, the seatbelt was still wrapped around Bagley's neck, violently choking him and placing great strain on his neck as the seatbelt became taut. *Id.* Kolb immediately leaned in the car and began unwrapping the seatbelt from around Bagley's neck. *Id.* Kolb can be heard saying "come on man, come on" and "get out, get out, get out." *Id.* Kolb instructed Gray to radio EMS. *Id.*

---

[12] The Court acknowledges that *Joseph* does not clearly establish law for this case. Nonetheless, it is still helpful as the Fifth Circuit analyzed clearly established law as of February 7, 2017, which was before the events in the instant case.

1.   <u>Injury and Causation</u>

Kolb first argues that he did not cause an injury to Bagley by trying to pull him out of the car. Record Document 55-2, p. 22. Bagley contends that his neck was hurt and that he suffered pain as the result of Kolb's actions. Record Document 61, p. 17–18. Bagley alleges that even if his neck injury was pre-existing, Kolb further aggravated it. *Id.* at 18. Although Bagley did not attach any evidence to show that his pre-existing fracture was aggravated, a jury could find that Bagley suffered a significant amount of pain. Record Document 61-2, Gray Video Camera 2, at 22:51:46 to 22:52:52. Bagley's neck is under a great deal of stress when the seatbelt becomes taut. Bagley can be heard moaning as if he was in pain and deprived of sufficient oxygen once Kolb finally unwrapped the seatbelt. *Id.* For summary judgment purposes, Bagley does not need an expert opinion to establish that he suffered substantial pain. Whether Bagley suffered a long-term injury or not can be debated. However, it is clear to the Court that Bagley suffered more than a *de minimis* injury that was caused by Kolb attempting to pull Bagley out of the police vehicle. This type of injury, even if minor, is constitutionally cognizable if it results from unreasonably excessive force. *See Flores*, 381 F.3d at 398.

2.   <u>Objective Reasonableness</u>

Kolb next claims that his actions were not a use of force under the Fourth Amendment. Record Document 55-2, p. 22. However, he cites to no case to support this contention. It appears Kolb is trying to argue that he did not intend to use force against Bagley because Kolb did not realize how tight the seatbelt was around Bagley's neck. *See id.* However, Kolb's subjective intent is irrelevant. "[T]he question is whether [Kolb's] actions [were] 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation. *Ballard*, 444 F.3d at 402 (alteration to original) (citations omitted). "An officer's evil

intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.* (citation omitted).

As stated above, the Court must consider the *Graham* factors in determining whether Kolb's actions were clearly excessive and unreasonable. For the same reasons as discussed above, the Court finds that the first factor, the severity of the crime, weighs against the reasonableness of the force because Bagley was suspected of misdemeanors and the force occurred after he was apprehended, searched, and handcuffed.

As to the second and third *Graham* factors, important in this analysis is the fact that Bagley stopped offering any resistance. In viewing the video in a light most favorable to Bagley, it shows Bagley sitting in the vehicle, dazed from Kolb's punches, and offering no resistance to Kolb's efforts to move him around. Record Document 61-2, Gray Video Camera 2, at 22:51:46 to 22:52:52. The video also makes clear that Bagley is no longer trying to harm himself with the seatbelt. *Id.* A reasonable officer in Kolb's shoes could have perceived Bagley as unarmed, handcuffed, and subdued. Another important consideration is the vast size difference between Kolb and Bagley. As stated above, Kolb is 6'7" and weighs about 280 pounds, whereas Bagley is around 5'11" and weighs approximately 150 pounds. Record Document 61-4, pp. 90–91. Therefore, in viewing the facts in a light most favorable to Bagley, there was no threat to officer safety outside the normal threat that exists in all arrests.

Moreover, because Bagley was handcuffed, subdued, and compliant—i.e., not resisting or fleeing—the second and third *Graham* factors strongly weigh against any use of force, aside from unwrapping the seatbelt from Bagley's neck. Although removing Bagley from the vehicle was not unreasonable, a jury could conclude that the violent nature in which Kolb went about it when met

with no resistance was excessive and unreasonable, especially when attempted before unwrapping the seatbelt. *See Trammell*, 868 F.3d at 343; *Bush*, 513 F.3d at 501–02; *Ramirez*, 716 F.3d at 378–79. Because Kolb's attempt to pull Bagley out of the car was not reasonably necessary to gain compliance or to protect Bagley, a jury could reasonably conclude that Kolb violated Bagley's constitutional rights.

### 3. Clearly Established

Kolb may still be entitled to qualified immunity, unless case law had established that his conduct violated the Fourth Amendment as of January 6, 2018. *See White*, 137 S. Ct. at 552. It has been clearly established since at least 2013 that an officer cannot use violent force against an arrestee who has been handcuffed and subdued. *See* discussion and cases cited *supra* Part I.C.3.

Here, the video shows that Bagley is handcuffed and subdued in the back of the police vehicle. Bagley is not offering any resistance, nor is he trying to harm himself with the seatbelt. Therefore, based on clearly established law, the need for force was greatly reduced and the need for violent force was non-existent. *See Bush*, 513 F.3d at 501–02; *Ramirez*, 716 F.3d at 378–79. In viewing the video in a light most favorable to Bagley, Kolb attempted to jerk Bagley from the car which caused the seatbelt to become taut. Record Document 61-2, Gray Video Camera 2, at 22:51:46 to 22:52:52. This in return caused great strain on Bagley's neck and restricted his ability to breathe. *Id.* Because it was clearly established that the use of violent force against an arrestee who is handcuffed and subdued was unreasonable, Kolb is not entitled to qualified immunity as to this use of force. Summary judgment is not proper on Bagley's excessive force claim based on Kolb pulling him from the car.

### E.  Cisco's Closed-Fist Strikes

#### 1.  <u>Injury and Causation</u>

Cisco first argues that he did not cause an injury to Bagley when he delivered two strikes to Bagley's face. Record Document 55-2, pp. 25–26. Bagley disputes this point and alleges that Cisco "aggravated existing injuries already caused by" Kolb. Record Document 35, ¶ 19. Cisco contends that this argument is purely speculative and has not been supported by competent summary judgment evidence. Record Document 55-2, p. 25. However, it is undisputed that Bagley suffered a right orbital medial wall fracture and a bloody mouth from his encounter with the police. Record Document 55-1, ¶ 55. It is also undisputed that both Kolb and Cisco punched Bagley in the face. Bagley has not provided expert medical evidence regarding causation. Nonetheless, for summary judgment purposes, it does not take expert medical evidence to link a facial fracture to the officers' punches when the evidence shows that Bagley did not have a facial fracture before the encounter but was diagnosed with the fracture when he was brought to the hospital that night. Bagley has met his burden of showing more than a *de minimis* injury that was caused by Cisco's use of force. It is up to the jury to weigh the magnitude of the injuries inflicted by each officer. However, Bagley's injury is only cognizable if it resulted from unreasonably excessive force.

#### 2.  <u>Objective Reasonableness</u>

As stated above, the Court must analyze the reasonableness of Cisco's conduct in light of the *Graham* factors. Similar to the Court's analysis as to Kolb's conduct above, the Court finds the first *Graham* factor, the severity of the crime, militates against the reasonableness of the force because Bagley was accused of misdemeanors and the force occurred after he was apprehended, searched, and handcuffed.

Relevant to the second and third *Graham* factors, Cisco arrived at the scene after Kolb's use of force and did not witness Kolb search Bagley. *See* Record Document 55-8, p. 8. However, Cisco arrived at a relatively calm scene. *Id.* Bagley was seated by a police vehicle and offered minimal, if any, resistance. Record Document 61-2, Gray Video Camera 2, at 22:53:30 to 22:56:59. A reasonable officer in Cisco's position could have requested a status update and discovered that Bagley had been searched already and was completely unarmed. Moreover, Bagley was plainly handcuffed and outnumbered three to one.[13]

Bagley can be heard shouting and whining at different points while outside the vehicle, which clearly contradicts his claim that he was unconscious this whole time. *Id.* at 22:53:30 to 22:56:59. At about 22:57:00, Bagley suddenly yells something incoherent and kicks in the direction of Gray,[14] who was trying to restrain his legs. *Id.* at 22:57:00. Although the video does not show it, the audio captures what the parties agree is Cisco striking Bagley in the face. *Id.* Based on the video, Bagley's sudden scream and erratic movement could reasonably be perceived as physical resistance. *See Mathews v. Davidson*, 674 F. App'x 394, 396 (5th Cir. 2017) (per curiam); *Carroll v. Ellington*, 800 F.3d 154, 176 (5th Cir. 2015). As such, Cisco was entitled to use a heightened

---

[13] The parties dispute whether Bagley's hands were behind him or in front of him. The video clearly shows Kolb removing Bagley from the car with his hands still in front of him. *Id.* at 22:53:11. At this point, the camera is only able to capture what appears to be Bagley's legs. The video does not show Bagley's hand placement after being seated by the car. In Cisco's sworn deposition, he states that Bagley's hands were in front of him. Record Document 55-8, p. 14. In Bagley's deposition, he states that he has no memory of his interaction with Cisco because he was knocked out by Kolb's punches. Record Document 55-10, pp. 21–22. In his statement of material facts, however, Bagley contends that he "was handcuffed behind his back." Record Document 61-1, ¶ 51. Bagley has not cited to competent summary judgment evidence in support of this statement. Therefore, the Court will accept Cisco's uncontroverted sworn statement that Bagley's hands were still in front of him, albeit in handcuffs.

[14] Although the video does not clearly show who was by Bagley's legs, it is uncontroverted that it was Gray. *See* Record Document 61-5, p. 36. The video also shows that one of the officers is on or near Bagley's legs at different points. Record Document 61-2, Gray Video Camera 2, at 22:54:45 to 22:57:02.

degree of force to return Bagley to compliance. *See Poole*, 691 F.3d at 629. The question becomes whether the particular force used by Cisco was reasonable in light of the force he was authorized to use. *See Deville*, 562 F.3d at 167.

After handcuffing and subduing a suspect, it is unreasonable for an officer to strike a compliant arrestee. *See Ramirez*, 716 F.3d at 378–79. However, despite being handcuffed, Bagley engaged in what a reasonable officer could perceive as active resistance when Bagley kicked in the direction of Gray. Although a reasonable officer could have subdued Bagley without striking him in the face, qualified immunity protects officers in the borderline cases. *See Griggs v. Brewer*, 841 F.3d 308, 315 (5th Cir. 2016) (stating that the officer's "actions may not have been as restrained as we would like to expect from model police conduct, but qualified immunity protects officers from the sometimes hazy border between excessive and acceptable force") (cleaned up). Based on current case law, striking an actively resisting suspect who could reasonably be perceived as kicking in the direction of an officer is not clearly excessive or unreasonable. *See Pratt v. Harris Cnty., Tex.*, 822 F.3d 174, 182 (5th Cir. 2016) (holding that it was not clearly excessive or unreasonable to tase a handcuffed suspect who resumed resistance by kicking an officer while on the ground). Therefore, Cisco is entitled to qualified immunity as to his use of force.

### F.  Gray's Failure to Intervene

Bagley alleges that Gray should have intervened to stop Kolb and Cisco from striking him.[15] "[A]n officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under [§] 1983" if the first officer

---

[15] Bagley does not clearly allege that Gray should have intervened to prevent Kolb from pulling him from the car. *See* Record Document 35, ¶¶ 21–22. Neither party makes an argument regarding this potential claim in their briefs. As such, the Court casts no view as to whether this claim is even part of this case at this time.

"acquiesce[d]" in the constitutional violation. *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). The non-intervening officer must "know[] that a fellow officer is violating an individual's constitutional rights." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (quoting *Randall v. Prince George's Cnty.*, 302 F.3d 188, 204 (4th Cir. 2002)). "An officer is liable for failure to intervene when that officer: (1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act." *Joseph*, 981 F.3d at 343 (citing *Whitley*, 726 F.3d at 646). Additionally, Bagley has "the burden to demonstrate that the law was 'clearly established'—that, as of [January 6, 2018], the date of their encounter with [Bagley], any reasonable officer would have known that the Constitution required them to intervene." *Id.* (alteration to original).

However, Bagley has failed to establish a constitutional violation as to Cisco's conduct, and, as such, Bagley's failure to intervene claim fails as a matter of law as it relates to Gray failing to prevent Cisco's strikes.

As to Kolb's use of force, there is a dispute of material fact as to whether Kolb violated Bagley's constitutional rights. In defense, Gray contends that she did not see Kolb strike Bagley because Kolb was blocking her view. Record Document 55-2, p. 26. Additionally, she claims that it happened so fast that she did not have a reasonable opportunity to intervene. *Id.* Bagley counters that Gray should have been able to see or hear what was happening to him because bystanders were able to see what was occurring. Record Document 61, p. 21. However, Bagley has not attached competent summary judgment evidence to show that Gray was in a position to see him. The video only captures the voice of a bystander saying something to the effect of "y'all can't do that to him" and that the bystander "just wants to be able to watch." Record Document 61-2, Gray Video Camera

2, at 22:51:40 to 22:56:55. Bagley did not attach any evidence showing the positioning of this bystander in relation to Gray or establishing exactly what the bystander saw. Moreover, Bagley has not submitted sufficient evidence showing that Gray had a realistic opportunity to stop Kolb's punches. The video shows that the six strikes happened within five seconds of each other. *Id.* at 22:51:40 to 22:51:45. Additionally, Gray's voice was also caught on audio at the time Kolb used force telling someone to "stay back" and "get back up there." *Id.* at 22:51:41 to 22:51:43. Under Bagley's theory, while Gray was monitoring and directing a bystander, she would have had to realize that Kolb was engaging in excessive force, approach Kolb, and try to stop the strikes, by which time the strikes would have been concluding. Because the six strikes were delivered "in such rapid succession," Gray had no realistic opportunity to stop them. *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988). Accordingly, Gray is entitled to qualified immunity and summary judgment as to Bagley's claims that she failed to intervene.[16]

## II.   *Monell* Claim against the City of Shreveport: Failure to Discipline

### A.  Municipal Liability under § 1983

Now that the Court has determined that a genuine issue of material fact exists as to whether Bagley's Fourth Amendment rights were violated, it will now evaluate whether this violation was caused by a policy or custom established by the City of Shreveport (the "City"). Again, § 1983 provides a federal cause of action for "the deprivation of any rights, privileges, or immunities

---

[16] The Court rejects Bagley's attempt to impute Kolb's and Cisco's actions to Gray through the concept of active participation or "team effort." *See* Record Document 61, p. 22. In the use of force context, all officers' uses of force are separately analyzed. Bagley does not accuse Gray of using excessive force. The cases cited by Bagley are inapposite. *Boyd v. Benton County*, 374 F.3d 773 (9th Cir. 2004), and the cases cited therein involved team members executing different duties during a search, not a seizure. In *Simpson v. Hines*, 903 F.2d 400, 403 (5th Cir. 1990), the Fifth Circuit denied summary judgment to ten officers who entered a prisoner's cell together and used force at the same time, but it expressly granted summary judgment to the officer who was not accused of using force.

secured by the Constitution and laws" of the United States against any person acting under color of state law. 42 U.S.C. § 1983. The Supreme Court has held that municipalities such as the City are "persons" within the meaning of § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, a municipality cannot be sued under § 1983 based on a theory of *respondeat superior* for a constitutional tort committed by one of its employees. *Id.* at 691. A municipality is only responsible for a constitutional harm if the execution of one of its customs or policies caused the injury. *Id.* at 694.

To impose liability on a municipality under § 1983, a plaintiff must prove the existence of three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy. *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694). Requiring a plaintiff to identify an official policy ensures that municipalities will only be held liable for constitutional violations that result from the decisions of government officials whose acts can be fairly attributed to those of the municipality itself. *Bryan Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404–05 (1997).

To satisfy the "official policy" element of a *Monell* claim, a plaintiff may either point to a policy statement that was promulgated by an official policymaker or to "a 'persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010) (quoting *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984)). To establish the existence of a custom or unofficial policy, a plaintiff must allege that the unconstitutional conduct occurred in cases other than his own or, in rare circumstances, that a final policymaker took a single

unconstitutional action. *Id.* "A customary municipal policy cannot ordinarily be inferred from single constitutional violations." *Piotrowski*, 237 F.3d at 581.

The "policymaker" element of municipal liability requires that either actual or constructive knowledge of the custom be attributable to the municipality's governing body or to an official to whom a governing body has delegated final policy-making authority. *Valle v. City of Hous.*, 613 F.3d 536, 542 (5th Cir. 2010) (quoting *Webster*, 735 F.2d at 842). Finally, "there must be a direct causal link between the municipal policy and the constitutional deprivation." *Piotrowski*, 237 F.3d at 580. In other words, the policy must be the "moving force" behind the injury. *Id.* Without this high threshold of proof, "municipal liability collapses into *respondeat superior* liability." *Id.* (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998)).

Instead of pointing to any official policy, Bagley seeks to hold the City liable for an unconstitutional pattern or practice relating to officer discipline within the Shreveport Police Department ("SPD"). The Fifth Circuit has held that "[i]n order to find a municipality liable for a policy based on a pattern, that pattern 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'" *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 396 (5th Cir. 2017) (quoting *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009)). "A pattern requires similarity, specificity, and sufficiently numerous prior incidents." *Id.*

### B.  Municipal Liability for Failure to Discipline

In *Piotrowski*, the Fifth Circuit acknowledged that a municipal policy of inadequate police officer discipline would be unconstitutional "if it was pursued with deliberate indifference toward the constitutional rights of citizens." 237 F.3d at 581. The court stated that one indication of the

existence of such a policy could be a "purely formalistic investigation in which little evidence was taken, the file was bare, and the conclusions of the investigator were perfunctory." *Id.* at 582. The court declined to find that a policy of inadequate investigation was present in *Piotrowski* because the record showed that the complaints against the officers in question had been thoroughly investigated and, more importantly, because the plaintiff offered no evidence of complaints against the officers other than her own. *Id.* The court opined that, without demonstrating a pattern of abuses, it is "nearly impossible" to hold a municipality liable for lax disciplinary policy. *Id.*

The United States District Court for the Eastern District of Louisiana has denied a municipality's motion for summary judgment at least twice. In *Hayward v. City of New Orleans*, the plaintiff provided evidence showing that one of the police officers she was suing for the excessive use of force had been the subject of fourteen internal complaints and seven lawsuits over a nine-year period. No. 02-3532, 2004 WL 258116, at *5 (E.D. La. Feb. 12, 2004). Thirteen of the internal complaints involved "abuse-type" allegations and most of them were withdrawn, not sustained, or dismissed. *Id.* The plaintiff also provided strong evidence showing that police supervisors thought the internal investigation process was inadequate. *Id.* The plaintiff argued that the city's inaction, after repeated complaints, "constituted an official policy of deliberate indifference to constitutional rights under *Monell*." *Id.* at *6. The district court found that questions of fact existed as to whether city officials had notice of the abuse complaints against the officer, whether city officials were deliberately indifferent to those complaints, and whether the city's failure to train or discipline the officer was the moving force behind the plaintiff's injuries and therefore denied summary judgment on that claim. *Id.* at *7.

In *Hegeman v. Harrison*, the plaintiff alleged that the City of New Orleans and the city's superintendent failed to adequately discipline the use of unauthorized force by city police officers.

No. 18-613, 2019 WL 1277523, at *12 (E.D. La. Mar. 20, 2019). In support of this claim, the plaintiff pointed to employment records showing that, in an eight-year period, eleven use of force complaints were brought against one of the officers she accused of using excessive force against her. *Id.* The plaintiff also provided evidence showing that the New Orleans Police Department received more than 8,400 complaints between the years 2013 and 2017, and over 200 of those complaints concerned the use of unauthorized force. *Id.*

The city argued that the number of prior use of force complaints did not account for those that were "unfounded" and noted that none of the investigations into the complaints filed against the officer involved in the plaintiff's case had resulted in discipline or a violation of a departmental policy. *Id.* The court rejected this argument, pointing to a previous Fifth Circuit case that refused to accept similar reasoning. *Id.* (citing *Peterson*, 588 F.3d at 852 ("[T]hat the department itself vaguely ruled most of its complaints 'not sustained' or 'unfounded' is no assurance that these investigations exonerate the City. To the contrary, that only four of the 27 complaints were 'sustained' after investigation may tilt in [the plaintiff's] favor.")). Citing *Hayward*, the court held that the amount of use of force complaints against the individual officer, and the New Orleans Police Department as a whole, created a factual issue as to whether the city's policymakers had notice of the complaints, whether the city's investigation process was adequate, and whether the city's failure to discipline the individual officer was the "moving force" behind the plaintiff's injuries. *Id.*

## C.  Bagley's Failure to Discipline Claim

Bagley argues that the City has failed to discipline Kolb after numerous similar instances.[17] Record Document 61, p. 25. Bagley contends that the City acted with deliberate indifference by failing to take any corrective action concerning the numerous complaints against Kolb for using excessive force. *Id.* Bagley requests the Court take judicial notice of five federal civil rights suits against Kolb, which all involved allegations that he excessively punched an arrestee in the face.[18] *Id.* at 25–29. The City counters that it has a thorough investigatory process and that it has an Early Intervention System ("EIS") if an officer has three or more sustained or non-sustained complaints in a twelve-month period. Record Document 71, pp. 8–9. Kolb was never identified by the EIS because he did not exceed two "sustained" or "not sustained" complaints in a twelve-month period.[19] *Id.*

Bagley has attached Kolb's IAB history, which shows that between the years 2013 and 2017, SPD received seven use of force complaints against him.[20] Record Document 63-5. Kolb was exonerated for three of those complaints, three were not sustained, and one was deemed unfounded. Accounting for the shorter four-year time period, these numbers are similar to the number of complaints against the individual officers in *Hayward* and *Hegeman*, which involved fourteen

---

[17] Bagley's failure to discipline claim mirrors that of a prior case against Kolb, presided over by the undersigned: *Muslow*, 491 F. Supp. 3d 172.

[18] The cases are the instant action; *Konrad v. Kolb*, 5:17-cv-0291 (W.D. La. 2017); *Muslow v. City of Shreveport*, 5:17-cv-1038 (W.D. La. 2017); *Tucker v. City of Shreveport*, 5:17-cv-1485 (W.D. La. 2017); and *Brock v. Smith*, 5:17-cv-0737 (W.D. La. 2017). *Konrad*, *Muslow*, and *Brock* have all settled and are closed. *Tucker* is an active case at this time.

[19] According to the Internal Affairs Bureau ("IAB") "Classification Definitions of Administrative Investigations" chart, "Unfounded" refers to an allegation that was false or not factual, "Exonerated" means that the incident occurred but was lawful and proper, and "Not Sustained" means that there was insufficient evidence to either prove or disprove the allegations. Record Document 63-10, p. 11.

[20] Defendants have not objected to Bagley's exhibits as being inadmissible. The Court previously ruled on many of the same exhibits in a prior case. *See Muslow*, 491 F. Supp. 3d at 193–94.

internal complaints and seven lawsuits over nine years and eleven complaints over eight years, respectively. *See* 2004 WL 258116 at *5; 2019 WL 1277523 at *12. Also notable is the existence of five civil lawsuits against Kolb, including this one, alleging markedly similar conduct.

This evidence indicates a pattern of behavior by Kolb and raises an issue of fact as to whether the City had notice of this pattern and was deliberately indifferent to the constitutional rights of its citizens by failing to discipline Kolb. *Piotrowski*, 237 F.3d at 582 ("A pattern could evidence not only the existence of a policy but also official deliberate indifference."). The record shows that Kolb was the subject of seven IAB complaints and four lawsuits in the span of four years prior to his interaction with Bagley. Additionally, Kolb stated in his deposition that he has not received any discipline relating to any excessive force complaint. Record Document 61-4, pp. 15–16. At least two of the seven complaints and all five of the lawsuits allege that Kolb used excessive force by punching a person in the face. This evidence shows that numerous similar complaints have been brought against Kolb for a specific behavior for which he was never disciplined. The fact that none of the complaints against Kolb were sustained "may tilt in [Bagley's] favor" and support Bagley's argument that SPD's review was perfunctory. *Peterson*, 588 F.3d at 852; *Muslow*, 491 F. Supp. 3d at 195–97 (finding that two SPD IAB reviews concerning Kolb's use of force "give credence to the theory that SPD was lax in its investigations into use of force complaints and failed to discipline its officers in connection with such complaints").[21] The timing of the lawsuits and

---

[21] Like the plaintiff in *Muslow*, Bagley has attached the "Rainey" IAB file and the "Muslow" IAB file. *See* 491 F. Supp. 3d at 195–97; Record Documents 63-6 & 63-10. In *Muslow*, this Court found that these files supported the plaintiff's argument that SPD's review was not thorough when investigating Kolb's use of force complaints. *See* 491 F. Supp. 3d at 195–97. Also concerning is that this Court denied summary judgment in *Muslow*, *see id.*, but the IAB report listed its findings as exonerating Kolb for his use of force. Record Document 63-10, p. 9. Defendants even argue that "not sustained" is akin to a court's denial of summary judgment. Record Document 71, pp. 8–9. This discrepancy lends credence to Bagley's theory that SPD's internal investigations were insufficient and deliberately indifferent.

complaints raise questions as to what knowledge the City had about Kolb's behavior at the time the events in this case took place and, consequently, whether the City's failure to take corrective action concerning Kolb's conduct was the moving force behind the violation of Bagley's rights. Thus, the City's Motion for Summary Judgment is denied as to Bagley's § 1983 claim for failure to discipline.

### III. <u>State Law Claims</u>

#### A. State Constitutional Claim

Similar to Bagley's action under the Fourth Amendment, he alleges that Kolb's and Cisco's uses of force violated his right to privacy guaranteed by the Louisiana Constitution. In Louisiana, the right to privacy ensures that "[e]very person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy." La. Const. art. I, § 5. Although the Louisiana Supreme Court has not articulated a clear standard for state constitutional claims alleging excessive force, "Louisiana federal district courts have noted that principles embodied in the Fourth Amendment have been incorporated into Article I, Section 5 of the Louisiana Constitution." *Shepherd v. City of Shreveport*, No. 14-2623, 2018 WL 1513679, at *10 (W.D. La. Mar. 27, 2018) (citing *Todd v. City of Natchitoches*, 238 F. Supp. 2d 793, 798–99 (W.D. La. 2002)). This Court has already held that absent more precise guidance from the Louisiana Supreme Court, the "Fourth Amendment standards control the analysis of alleged infringements on the constitutional right to privacy." *Tucker v. City of Shreveport*, No. 17-1485, 2019 WL 961993, at *11 (W.D. La. Feb. 27, 2019), *rev'd on other grounds*, 998 F.3d 165 (5th Cir. 2021). To the extent Cisco was entitled to summary judgment under the Fourth Amendment, he is likewise entitled to summary judgment as to Bagley's state constitutional claim. Therefore, summary judgment is appropriate as to Bagley's state constitutional claim as it relates to Cisco's use of force. However, the Court determined that Kolb is not entitled to qualified immunity under

the Fourth Amendment. For the same reasons, Kolb is not entitled to summary judgment as to Bagley's state constitutional claims.

### B.  Battery and Negligence

Bagley alleges that the actions of Kolb and Cisco constituted the tort of battery. Record Document 35, pp. 8–9. Alternatively, Bagley avers that Kolb was negligent when he jerked him out of the police car with the seatbelt still around his neck. *Id.* Under the Louisiana Code of Criminal Procedure, a "person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained." La. Code Crim. Proc. art. 220. "Under ordinary circumstances the use of reasonable force to restrain an arrestee shields a police officer from liability for battery." *Ross v. Sheriff of Lafourche Parish*, 479 So. 2d 506, 511 (La. App. 1 Cir. 1985). "Excessive force transforms ordinarily protected use of force into an actionable battery," *Penn v. St. Tammany Par. Sheriff's Off.*, 2002–0893, p. 7 (La. App. 1 Cir. 4/2/03); 843 So. 2d 1157, 1161, and exposes officers and their agencies to tort liability, *Kyle v. City of New Orleans*, 353 So. 2d 969, 972 (La. 1977). In *Kyle*, the Louisiana Supreme Court identified the duty owed by officers when effecting a lawful arrest— to act reasonably in light of the totality of the circumstances. *Id.* at 972–73. The reasonableness of the force used is measured from the perspective of "ordinary, prudent, and reasonable [persons] placed in the same position as the officers and with the same knowledge as the officers." *Id.* at 973 (citing *Picou v. Terrebonne Par. Sheriff's Off.*, 343 So. 2d 306 (La. Ct. App. 1977)). The *Kyle* court also identified seven factors (the "*Kyle* factors") to use in evaluating the reasonableness of an officer's conduct:

> the known character of the arrestee, the risks and dangers faced by the officers, the nature of the offense involved, the chance of the arrestee's escape if the particular means are not employed, the existence of alternative methods of arrest, the physical

size, strength, and weaponry of the officers as compared to the arrestee, and the exigencies of the moment.

*Id.* Louisiana's Second Circuit Court of Appeal has recognized another consideration: whether a suspect was "intoxicated, belligerent, offensive, or uncooperative." *Hall v. City of Shreveport*, 45,205, p. 6 (La. App. 2 Cir. 4/28/10); 36 So. 3d 419, 423 (citing *Evans v. Hawley*, 559 So. 2d 500 (La. Ct. App. 1990)). In other cases, the Louisiana Supreme Court used the duty-risk analysis to evaluate excessive force as a species of negligence and used the *Kyle* factors in analyzing breach.[22] *Stroik v. Ponseti*, 96-2897, p. 7 (La. 9/9/97); 699 So. 2d 1072, 1077–78; *Mathieu v. Imperial Toy Corp.*, 94-0952, p. 7 (La. 11/30/94); 646 So. 2d 318, 323.

Kolb and Cisco contend that the same standards apply to Bagley's state law tort claims as his federal claims and, therefore, these claims should be dismissed for the same reasons. This is true as to the reasonableness inquiry. *See Watkins v. Gautreaux*, No. 19-635, 2021 WL 309139, at *13 (M.D. La. Jan. 28, 2021) (stating that under § 1983 "the issue is (in part) whether every reasonable officer under the circumstances would know that [the officer's] conduct was unlawful under clearly established law. But, for the state [tort] claims, the key question is whether, under the totality of the circumstances, [the officer's] conduct was unreasonable."). The Fifth Circuit has stated that "Louisiana's excessive force tort mirrors its federal constitutional counterpart" as they both analyze reasonableness under the totality of the circumstances and that the *Kyle* factors are "sufficiently similar to the *Graham* factors" to warrant the same outcome. *Deville*, 567 F.3d at 172–73; *see Shepherd on behalf of Est. of Shepherd v. City of Shreveport*, 920 F.3d 278, 286 (5th Cir.

---

[22] Although battery and negligence are different torts, in a use of force situation, Louisiana courts apply the *Kyle* factors similarly to both claims in determining whether the officer's actions were reasonable in light of the totality of the circumstances. Defendants have not moved for summary judgment based on Bagley being unable to prove the elements of battery or negligence; they have only moved for summary judgment insofar as they claim that their conduct was reasonable under the circumstances. Record Document 55-2, pp. 30–31.

2019). The Court has already found that a jury could conclude that Kolb behaved unreasonably under the totality of the circumstances. Therefore, for the same reasons, Kolb is not entitled to summary judgment as to Bagley's state law excessive force tort claims. The Court, however, has already determined that Cisco's conduct was not clearly excessive or unreasonable under the totality of the circumstances. For the same reasons, Cisco is entitled to summary judgment as to Bagley's excessive force claim as a state law tort.

### C. Negligence/Failure to Monitor and/or Protect

In Bagley's complaint, he claims that Gray and Kolb were negligent when they left him unattended in the police car for about eleven minutes. Record Document 35, p. 9. During this time, Bagley wrapped the seatbelt around his neck in an apparent suicide attempt. Defendants did not initially move for summary judgment on this claim. Bagley, however, addressed this claim in his opposition, and Defendants addressed it in their reply. The Court, nonetheless, denies summary judgment.

Under Louisiana law, a police officer "must exercise reasonable care to preserve the safety of his prisoner." *Abraham v. Maes*, 430 So. 2d 1099, 1101 (La. Ct. App. 1983) (citing *Griffis v. Travelers Ins. Co.*, 273 So. 2d 523 (La. 1973)); *Arshad v. Congemi*, 14-87 (La. App. 5 Cir. 10/29/14); 164 So. 3d 193, 200, *writ denied*, 2014-2490 (La. 2/13/15); 168 So. 3d 387. The standard of care is heightened when the suspect is intoxicated. *Abraham*, 430 So. 2d at 1101 (citing *Barlow v. City of New Orleans*, 257 La. 91, 241 So. 2d 501 (1970)); *Arshad*, 164 So. 3d at 200. Louisiana courts utilize a duty-risk analysis for negligence claims, which requires the plaintiff to prove the following:

(1) the conduct in question was the cause-in-fact of the resulting harm;

(2) defendant owed a duty of care to plaintiff;

(3) the requisite duty was breached by the defendant;

(4) the risk of harm was within the scope of protection afforded by the duty breached.

*Stroik*, 699 So. 2d at 1077; *see Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (quoting *Lemann v. Essen Lane Daiquiris, Inc.*, 2005-1095 (La. 3/10/06); 923 So. 2d 627, 633) (stating a fifth element: actual damages).

Kolb and Gray do not dispute that they had a duty to exercise reasonable care in preserving Bagley's safety. *See* Record Document 71, p. 9. They, however, argue that they acted reasonably under the circumstances and that it was not reasonably foreseeable that Bagley was going to wrap the seatbelt around his neck. *Id.* Additionally, they claim that Bagley cannot show an injury resulting from the alleged breach of duty. *Id.* Kolb and Gray have not cited to any case law to support summary judgment on this claim.

The evidence, when viewed in Bagley's favor, shows that the officers left Bagley unattended for about eleven minutes. Record Document 61-2, Gray Video Camera 2, at 22:40:20 to 22:51:12. There is no evidence that the officers were faced with other exigencies that would have required them to leave Bagley alone without checking on him. Moreover, the officers knew or should have known that Bagley was in an intoxicated state and exhibiting mental instability. A jury could reasonably conclude that Kolb and Gray breached their duty of care to Bagley by leaving him unattended in the car for this length of time and that it was reasonably foreseeable that Bagley could be injured, especially considering that his intoxication and mental state "called for more caution on the part of others." *Barlow*, 241 So. 2d at 504 (internal citations and quotation marks omitted) (holding that officers were negligent leaving an intoxicated arrestee unattended in the back of the police car notwithstanding if the arrestee was left alone for a few minutes or fifteen minutes).

Bagley has submitted evidence that he suffered neck pain and a right orbital medial wall fracture. He avers that he would not have suffered these injuries if the officers exercised reasonable care. In order to prevail at trial, Bagley will have to prove that Kolb's and Gray's "substandard conduct was a cause in fact of [his] injuries" and "a legal cause of [his] injuries." *Audler*, 519 F.3d at 249. Considering the lack of argument and the factual nature of these elements, the Court cannot answer these questions as a matter of law based on the summary judgment record.[23] Therefore, summary judgment is denied as to this claim.

### D.  Vicarious Liability

Bagley contends that the City is vicariously liable for the Defendant officers' tortious conduct. Record Document 35, pp. 8–9. "Municipalities do not enjoy special protection from vicarious liability under Louisiana law and are subject to *respondeat superior* like every other employer." *Deville*, 567 F.3d at 174 (citing *Brasseaux v. Town of Mamou*, 1999-1584 (La. 1/19/00); 752 So. 2d 815); *see also* La. Civ. Code art. 2320. Defendants did not move for summary judgment as to Bagley's vicarious liability claim. Considering that the Court has not dismissed all claims for which the City of Shreveport may be vicariously liable, Defendants are not entitled to summary judgment as to Bagley's vicarious liability claim.

<u>CONCLUSION</u>

Based on the foregoing reasons,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment [Record Document 55] is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** as to Bagley's § 1983 claims against Cisco and Gray; these claims are **DISMISSED WITH PREJUDICE**. It is also **GRANTED**

---

[23] It will be a jury determination to assess Bagley's own fault when considering comparative fault. *See* La. Civ. Code art. 2323.

as to Bagley's state constitutional and tort claims against Cisco; these claims are **DISMISSED WITH PREJUDICE**. Cisco is terminated as a Defendant in this matter. Defendants' motion is **DENIED** in all other respects.

       **THUS DONE AND SIGNED** this ___3rd___ day of August, 2021.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE